UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| TODD A. JOHNSON, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. 4:15CV436 RLW |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of Defendant's final decision denying Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. For the reasons set forth below, the Court reverses the decision of the Commissioner and remands for further review.

### I. Procedural History

On December 30, 2011, Plaintiff filed an application for DIB alleging disability beginning August 2, 2010 due to lower back degenerative disc disease. (Tr. 12, 58, 120-21) The application was denied, and Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 58-76) On September 10, 2013, Plaintiff testified at a hearing before the ALJ. (Tr. 26-50) On November 4, 2013, the ALJ determined that Plaintiff had not been under a disability from August 2, 2010 through the date of the decision. (Tr. 12-21) Plaintiff then filed a request for review, and on January 28, 2015, the Appeals Council denied Plaintiff's request. (Tr. 1-3) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. Evidence Before the ALJ

At the September 10, 2013 hearing before the ALJ, Plaintiff was represented by counsel. Plaintiff testified that he lived alone. He completed two years of college but did not get a degree. Plaintiff received unemployment benefits from the fall of 2010 through January 2012, during which time he looked for clerical work and substitute teaching positions. He had a substitute teaching certificate. He also took computer classes at the request of the unemployment office. He learned to use WordPerfect but was not proficient. (Tr. 29-33)

Plaintiff further testified that he previously worked for the U.S. Postal Service preparing the mail for delivery and then delivering the mail. The preparation work included standing for three to four hours. He also primarily walked to deliver the mail. In 2003, he transitioned to light duty on a part-time basis because he had difficulty standing and walking to deliver mail daily. He worked three to four hours per day, five to six days a week. In 2007, Plaintiff went back to delivering mail via a mail truck to obtain more hours. He held that position until 2009, when he had problems sitting in the truck for long periods due to back strain. Plaintiff then returned to work four to five hours a day, casing mail and delivering it by walking. Plaintiff's manager then told Plaintiff he could no longer work on a part-time basis and could not remain employed if he was unable to perform full duty. Plaintiff left the U.S. Postal Service and applied for retirement disability in August 2011. He received a monthly payment and full coverage health insurance. (Tr. 33-37)

Plaintiff stated that he began treatment for his back condition with Dr. Vyas in 2007. Plaintiff ruptured two discs in his lower back in 1996 and underwent a laminectomy. His diagnosis was diminished capacity, and he experienced pain in his lower back and lumbar region at L4, L5, primarily on the right side. He had occasional tingling in his foot about twice a week.

2

Plaintiff used a lumbar roll and a cushion called a "back boy." He also wore a back brace once a week when he lifted groceries and carried them to his second floor apartment. Plaintiff used a cane once a week when walking outside on pavement or uneven ground. Plaintiff testified that he could walk 200 feet before needing to stop and rest for five minutes. He then could only walk an additional 50 feet. (Tr. 37-39)

Plaintiff opined that he could walk a total of 30 minutes during an eight-hour workday. He could stand for 10 minutes before needing to sit and rest or walk around to relieve the tension from standing. He stated that he could alternate between sitting and standing for about an hour but would then need to walk around for about 15 minutes. If he repeated the process four times, he would still feel tension in his spine and lower back. In the evening, Plaintiff could no longer sit comfortably and needed to lie down. He applied ice to his neck and back for about 10 minutes in the morning before stretching. Plaintiff stretched for about a half hour while lying on the floor. He stretched for 5 minutes in the evening. He took Ketoprofen for pain, which helped for a period of four to five hours. However, the medication caused drowsiness and difficulty focusing. Plaintiff experienced more tightness in his back during the afternoons. (Tr. 39-44)

A Vocational Expert ("VE") also testified at the hearing. The VE noted Plaintiff's past work experience and classified mail carrier as medium, semi-skilled, with a heavy exertional level. His job as a postal clerk was classified as light and unskilled; however, the exertional level as Plaintiff performed the job was at least medium. Plaintiff worked one day as a teacher aide, which was classified as light. The ALJ noted that Plaintiff's medical records and testimony suggested that he was limited to medium exertional work. Plaintiff should avoid ropes, ladders, and scaffolding; should avoid hazardous heights; and could frequently stoop, kneel, crouch, and crawl. Given these limitations, the VE testified that Plaintiff could perform his past positions as

3

a postal clerk and teacher aide. Other jobs that a hypothetical person with the same education, vocational background, and residual functional capacity ("RFC") could perform included mail sorter, marker, and furniture renter consultant. The VE testified that no conflict existed between the vocational evidence and the information in the Dictionary of Occupational Titles. (Tr. 44-47)

Plaintiff's attorney also questioned the VE, asking her to assume a hypothetical individual limited to sedentary exertion. The individual could stand and walk no more than two hours in an eight-hour workday; sit six hours in an eight-hour day; and lift no more than 10 pounds. In addition, the person would be absent on an unscheduled basis two times per month. Based on this hypothetical, the VE testified the individual could not perform work due to the absenteeism. If the person was not absent but was required to lie down or take a nap at least 15 minutes on an unscheduled basis, the individual could not work because of the need to be accommodated. Further, if the individual did not need to nap but needed more than three breaks a day, the person could not work with that accommodation. (Tr. 47-48)

The attorney then posed a new hypothetical, asking the VE to assume an individual limited to occasionally lifting no more than 10 pounds and frequently lifting less than 10 pounds. He could stand and/or walk less than two hours and needed to alternate between sitting and standing to relieve pain. Sitting was limited to a maximum of 40 minutes, and standing was limited to one minute at a time, for no more than 10 minutes in a day. The person required five minutes to make the adjustments, during which time he was not performing a task for the employer. The VE answered that the individual would be unable to perform work due to the need to be off task. (Tr. 47-49)

In a Disability Report – Adult, Plaintiff stated that he had degenerative disc disease in his lower bac, and stopped working in August 2010 due to this condition. (Tr. 177-83) He also

4

completed a Function Report – Adult, describing his daily activities. Plaintiff stated that he woke up, iced his back, stretched, showered, and dressed. He then did light chores such as house cleaning, made phone calls, or went to the grocery store or library. Plaintiff prepared lunch and dinner. He spent seven to eight hours sitting and watching TV or reading. He tried to walk three times a day for a half hour. Plaintiff woke up at night with numbness and tingling in his leg and foot. He could care for his personal needs but used a back brace when shaving and toileting. Plaintiff prepared all his meals, with breakfast and lunch daily and dinner once a week. He was able to iron, wash dishes, clean bathroom and kitchen counters, sweep, mop, dust, vacuum, and do small amounts of laundry. He went outside once a day and could walk and drive. Plaintiff shopped for groceries twice a week. He spoke on the phone with friends and family, and he occasionally went to movies with friends. He also went to the library and record store. Plaintiff reported that his condition affected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, stair climb, complete tasks, concentrate, understand, and follow instructions. He could not lift more than 25 pounds and performing physical activities for more than a few minutes or seconds caused tightness in his back. The pain made it difficult to concentrate on tasks. He could walk about 120 feet before needing to rest for five minutes. Plaintiff could pay attention for about 15 minutes. He was able to follow instructions and get along with authority figures. Plaintiff used a back brace, cane, lumbar roll, and seat cushion. (Tr. 185-92)

### III. Medical Evidence

Plaintiff was treated by Dr. Kamlesh Vyas on September 16, 2009 for complaints of back pain. Dr. Vyas continued Plaintiff's medication, which included Ketoprofen and Cyclobenzaprine, and prescribed epidural steroid injections ("ESI"). He also provided a Certificate of Illness, stating that Plaintiff had been continuously incapacitated and unable to

work from September 15, 2009 to September 16, 2009 due to medical problems. Plaintiff could resume working on September 17, 2009. Dr. Vyas completed another certificate indicating that Plaintiff was unable to work from October 31, 2009 through November 2, 2009 due to illness. (Tr. 264-67)

Dr. Vyas examined Plaintiff on November 20, 2009. Plaintiff reported increased back pain for two weeks. The pain radiated into Plaintiff's buttocks and thighs. He stated that he could not go to work for three days. Dr. Vyas ordered an MRI and a repeat ESI. (Tr. 263)

A November 25, 2009 MRI of Plaintiff's lumbar spine revealed "discogenic degenerative changes at L3-L4 and L4-L5 with a focal disc herniation eccentric to the right and extending into the right neural foramen at L3-L4." The changes resulted in "mild to moderate right lateral recess and proximal right neural foraminal stenosis at L3-L4 without significant change from previous examination of March 2009." The MRI further showed "mild right lateral recess and neural foraminal stenosis" at L4-L5, secondary to facet arthropathy and disc bulge. The radiologist noted that a previous laminectomy had been performed on the right side at L3-L4, L4-L5, and L5-S1. (Tr. 261-62)

On December 1, 2009, Plaintiff saw Charles Wetherington, M.D., for complaints of discomfort with sitting. Plaintiff stated that he had not worked in about three weeks due to pain. Although he obtained a reasonable degree of relief from the last set of injections, the steroid wore off. Dr. Wetherington gave Plaintiff the option of additional surgeries, and Plaintiff wanted to think about it before making a decision. Dr. Wetherington opined that Plaintiff could continue with work, as most of his job required sitting. (Tr. 272)

Plaintiff returned to Dr. Vyas on December 18, 2009. Plaintiff indicated that he had been out of work due to pain over the past three weeks but was feeling better and wanted to return to work. Dr. Vyas restricted Plaintiff to walking 3 hours and driving 1 hour. (Tr. 260) On April 30, 2010, Plaintiff complained of increased pain. He also mentioned being on a new route with more steps. (Tr. 259)

On June 25, 2010, Dr. Vyas prescribed work restrictions, including: (1) no lifting greater than 25 pounds; (2) standing only 10 minutes at a time; (3) walking only 3 hours; (4) no pushing greater than 50 pounds; (5) driving a maximum of one hour; and (6) permanent light duty. (Tr. 286) Plaintiff returned to Dr. Vyas on October 25, 2010 to request a list of medical restrictions for his job. Plaintiff reported that his pain had not changed but was stably controlled with the medications. He described pain in his upper back near his neck, numbness in his left hand, and a dull ache and tingling from the left shoulder down to the hand. Dr. Vyas noted a history of arthritis, degenerative joint disease, myopathy, and post-lumbar laminectomy syndrome. Examination revealed no tenderness or joint mobility abnormalities in the cervical spine/neck area. The cervical spine had full strength and range of motion ("ROM") without pain. Plaintiff's symptoms were solely on the left side, and his pain was stable on current medications with mild local tenderness. Dr. Vyas assessed brachial neuritis or radiculitis NOS; thoracic or lumbosacral neuritis or radiculitis, unspecified; and disturbance of skin sensation, likely secondary to cervical radiculopathy. (Tr. 247-48)

On February 23, 2011, Plaintiff returned to Dr. Vyas for a follow-up concerning back pain. Plaintiff reported his pain was better controlled but had changed with more pressure on his right side. He could not stay in the same posture for as long, and he reported tingling and pressure over the right side with symptoms in the foot. Examination revealed no tenderness or

7

joint mobility abnormalities in the cervical spine/neck area. The cervical spine had full strength and range of motion ("ROM") without pain. Dr. Vyas assessed thoracic or lumbosacral neuritis or radiculitis, unspecified, stable; and postlaminectomy syndrome, lumbar region, stable. Plaintiff planned to follow up with a neurosurgeon. (Tr. 245-46)

An MRI of Plaintiff's lumbar spine performed on March 8, 2011 revealed "right-sided decompression changes at the L3-4, L4-5, and L5-S1 levels with right-sided laminotomies at each of these levels." In addition, the MRI showed "enhancement of the right lateral recess-foraminal margin of the disc at the L3-4 level, but no other disc enhancement [was] observed." There was residual foraminal stenosis, greater on the right than the left at L3-4 and L4-5, but no residual central canal stenosis. Finally, the MRI revealed parineural scarring on the right at L3-4. (Tr. 252, 255)

On March 21, 2011, Daniel Scodary, M.D., evaluated Plaintiff for abdominal injury. Dr. Scodary noted Plaintiff's increasing right back pain, without leg pain but with right foot tingling. Plaintiff had numbness and weakness in his back on the right side. Dr. Scodary reviewed the MRI history and noted that L3-4 looked severe such that if Plaintiff considered anterior fusion, Dr. Scodary would recommend L3-S1. (Tr. 257)

On March 13, 2012, Plaintiff presented for an orthopedic consultative evaluation by Stanley London, M.D., at the request of the Missouri Disability Determination Service ("DDS"). Plaintiff's chief complaint was degenerative disc disease of the lower back. Dr. London observed that Plaintiff appeared uncomfortable moving around. Plaintiff's gait was normal, he could heel and toe walk, hop, and squat. He got on and off the table with some discomfort. The orthopedic and neurological exam revealed bilateral hypoactive knee and ankle jerks; negative toe signs; good and equal sensation bilaterally; straight leg raising about 35 to 40 degrees

8

bilaterally without back pain; flexes to 60 degrees; extension to 20 degrees; tilts and turns to 20 degrees, causing back discomfort; and tenderness in low back with only minimal spasm. Dr. London assessed postop discectomy and laminectomy with residual degenerative joint, degenerative disc disease and peripheral stenosis. Dr. London further opined that Plaintiff could lift and carry 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk less than 2 hours in an 8-hour workday; and needed to alternate between sitting and standing during the workday. He did not require a hand-held assistive device for ambulating. Dr. London did not believe Plaintiff could sustain a 40-hour workweek on a continual basis. (Tr. 275-81)

On March 15, 2012, Thomas Kuciejczyk-Kernan, M.D., examined Plaintiff, who requested a cancer screening and cholesterol screening. Plaintiff was taking Ketoprofen for chronic lumbar pain. Plaintiff's strength and tone were normal bilaterally in the upper and lower limbs, and his gait was normal. Dr. Kuciejczyk-Kernan assessed backache, unspecified. (Tr. 289-90)

On April 3, 2012, a non-physician Single Decision-Maker Jackie Adam provided a Residual Functional Capacity ("RFC") assessment based upon Plaintiff's medical records and statements. Ms. Adam found that Plaintiff could occasionally and frequently lift and/or carry 10 pounds; stand and/or walk for 2 hours; sit for about 6 hours; and push and/or pull an unlimited amount. He could only occasionally stoop and should avoid even moderate exposure to vibration. Ms. Adam discounted Dr. London's opinion because the opinion relied heavily on Plaintiff's subjective reports and was not supported by the evidence. She opined that Plaintiff demonstrated the maximum sustained work capability for sedentary work. (Tr. 58-66)

On May 14, 2012, Dr. Vyas completed a Physical Medical Source Statement at the request of Plaintiff's counsel. Dr. Vyas indicated that, in an 8-hour workday, Plaintiff could sit

9

15 minutes, stand 10 minutes, and walk 2 hours. He opined Plaintiff could lift and carry 25 pounds occasionally. He had no manipulative limitations in the hands. Dr. Vyas further opined that Plaintiff had no limitations in balancing but could not withstand longer periods. Plaintiff could only occasionally reach above head and never stoop. Dr. Vyas indicated that Plaintiff's medically determinable impairment of lumbar stenosis could be expected to produce pain. Objective indications of pain were muscle spasm and reduced range of motion. Plaintiff's subjective indications of pain were complaints of pain, irritability, and grimaces. Dr. Vyas opined that Plaintiff's pain precluded him from focusing on simple tasks on a sustained full-time work schedule. Dr. Vyas also stated Plaintiff would miss work twice a month. He further opined that Plaintiff should use a cane and that his impairments caused the need to lie down or take a nap during a workday. In addition, Plaintiff would need to take more than 3 breaks during a normal 8-hour workday. Dr. Vyas stated that Plaintiff's limitations lasted 12 continuous months, with an onset date of 2003. (Tr. 282-85)

On May 31, 2012, William Backlund, M.D., reviewed the Medical Source Statement submitted by Dr. Vyas. Dr. Backlund opined that Dr. Vyas' opinion was partially supported by the medical evidence. In addition, Dr. Backlund agreed with Ms. Adam's RFC assessment and further found that Plaintiff should be capable of standing and/or walking 4 hours daily. (Tr. 288)

Plaintiff returned to Dr. Vyas on September 7, 2012 for complaints of stomach nausea and frequent bowel movements. Plaintiff requested a prostate exam. (Tr. 295) On September 18, 2012, November 14, 2012, January 16, 2013, and February 19, 2013, Dr. Vyas for complaints unrelated to Plaintiff's back and for regular check-ups. (Tr. 291-94)

On September 18, 2013, Dr. Vyas provided a letter on behalf of Plaintiff. Dr. Vyas indicated that Plaintiff was diagnosed with post lumbar laminectomy syndrome and chronic back pain with lumbar radiculopathy. (Tr. 308)

## **IV. The ALJ's Determination**

In a decision dated November 4, 2013, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. He had not engaged in substantial gainful activity since August 2, 2010. The ALJ determined that Plaintiff had the following severe impairments: postoperative discectomy and laminectomy with residual degenerative joint disease; degenerative disc disease and peripheral stenosis; and obesity. However, he did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14-15)

After careful consideration of the record, the ALJ found that Plaintiff had the RFC to perform medium work, which included the following limitations: inability to climb ropes, ladders, or scaffolds; avoidance of hazardous heights; and frequent stooping, kneeling, crouching, or crawling. The ALJ assessed the objective and opinion medical evidence, as well as Plaintiff's subjective complaints, testimony, and work history. The ALJ determined that Plaintiff was capable of performing his past relevant work as a postal clerk, which position did not require the performance of work-related activities precluded by Plaintiff's RFC. Alternatively, the ALJ relied on the VE's testimony to find that, based on Plaintiff's age, education, work experience, and RFC, he could perform the jobs of mail sorter, marker, or furniture retail consultant. Thus, the ALJ concluded that Plaintiff had not been under a disability, as defined by the Social Security Act, from August 2, 2010 through the date of the decision. (Tr. 15-21)

## V. Legal Standards

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. The Social Security Act defines disability "as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). Those steps require a claimant to show: (1) that claimant is not engaged in substantial gainful activity; (2) that he has a severe physical or mental impairment or combination of impairments which meets the duration requirement; or (3) he has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) he is unable to return to his past relevant work; and (5) his impairments prevent him from doing any other work. *Id.*

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means less than a preponderance, but sufficient evidence that a reasonable person would find adequate to support the decision." *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010). "We will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because we might have reached a different conclusion had we been the initial finder of fact." *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (citations and internal quotations omitted). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. *See Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir.2000).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment. *Johnson v. Chater*, 108 F.3d 942, 944 (8th Cir. 1997) (citations and internal quotations omitted).

The ALJ may discount a plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. *Marciniak v. Shalala*, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that she considered all the evidence. *Id.* at 1354.

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the *Polaski*[1] factors and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount the testimony as not credible. *Blakeman v. Astrue*, 509 F.3d 878, 879 (8th Cir. 2007) (citation omitted). If inconsistencies in

---

[1] The Eight Circuit Court of Appeals "has long required an ALJ to consider the following factors when evaluating a claimant's credibility: '(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.'" *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. *Marciniak*, 49 F.3d at 1354.

## VI. Discussion

Plaintiff raises three arguments in his Brief in Support of the Complaint. First, he asserts that the ALJ failed to indicate the consideration given to treating specialist opinion evidence, did not weigh the treating physician opinion evidence, and did not correctly consider the physician specialty. Next, Plaintiff contends that the ALJ failed to support the RFC finding with substantial evidence from the record. Finally, Plaintiff argues that the ALJ erred by failing to consider Plaintiff's lack of health insurance and the disability findings by the OPM and the U.S. Postal Service and erred in relying on an incorrect recounting of the VE's testimony. Upon thorough review of the parties' briefs and the entire record, the Court finds that the ALJ did not properly assess Plaintiff's RFC such that the case should be remanded for further review.

Residual Functional Capacity is a medical question, and the ALJ's assessment must be supported by substantial evidence. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001) (citations omitted). RFC is defined as the most that a claimant can still do in a work setting despite that claimant's limitations. 20 C.F.R. § 416.945(a)(1). "Ordinarily, RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *2 (Soc. Sec. Admin. July 2, 1996) (emphasis present).

The ALJ has the responsibility of determining a claimant's RFC "'based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of [his] limitations.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). "An 'RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Sieveking v. Astrue*, No. 4:07 CV 986 DDN, 2008 WL 4151674, at *9 (E.D. Mo. Sept. 2, 2008) (quoting SSR 96-8p, 1996 WL 374184, at *7 (Soc. Sec. Admin. July 2, 1996)). Further, "[t]he ALJ's RFC determination must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Tinervia v. Astrue*, No. 4:08CV00462 FRB, 2009 WL 2884738, at *11 (E.D. Mo. Sept. 3, 2009) (citations omitted); *see also Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (citations omitted) (finding that medical evidence "must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' . . . ."). In addition, it is well settled "that it is the duty of the ALJ to fully and fairly develop the record, even when, as in this case, the claimant is represented by counsel." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citation omitted). The ALJ may not rely upon his or her own inferences. *Id.* at 858.

Here, Plaintiff correctly notes that, in making the RFC determination, the ALJ failed to support her findings with specific medical evidence. Indeed, the RFC finding sets forth an ability to perform medium work with the limitations of no climbing rope, ladders, or scaffolds; avoiding hazardous heights; and frequent stooping, kneeling, crouching, or crawling. (Tr. 15) However, the opinion contains no discussion of how the medical evidence supports Plaintiff's

capacity for medium work level, which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). While the examining physicians and the consulting physicians assessed Plaintiff's ability to function in the workplace, none of the physicians indicated an ability to occasionally lift 50 pounds and frequently lift 25 pounds. Dr. Vyas, Plaintiff's treating physician, limited Plaintiff to lifting no more than 25 pounds occasionally and frequently. (Tr. 283) Other opinions, including those from the non-examining physician and single-source decision-maker, assessed a lower weight restriction and a sedentary limitation on Plaintiff. (Tr. 66, 288)

The ALJ points to no medical evidence in the record demonstrating Plaintiff's ability to lift up to 50 pounds. The ALJ gave little weight to Dr. Vyas and little weight to the consulting orthopedist, Dr. London, who limited Plaintiff to lifting 10 pounds or less. (Tr. 18-19, 278) The ALJ gave some weight to the opinion of Dr. Backlund but either ignored or overlooked his affirmance of Ms. Adams' restriction to lifting 10 pounds. (Tr. 19, 62, 288) Instead, the ALJ draws upon her own inferences from the medical reports in finding that Plaintiff could perform medium work. "Unless the inferences are supported by opinions from treating or consultative experts, they do not constitute substantial evidence." *Hess v. Colvin*, No. 4:14CV1593 CDP, 2015 WL 5568056, at *11 (E.D. Mo. Sept. 22, 2015) (citation omitted); *see also Pate-Fires v. Astrue*, 564 F.3d 935, 946-47 (8th Cir. 2009) (finding that the law forbids the ALJ from "playing doctor"). In evaluating Plaintiff's RFC, the ALJ "was required to consider at least some supporting evidence from a medical professional." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).

Because the ALJ's RFC determination is not supported by substantial evidence, the Court will remand the case to the ALJ for further review. The decision is unclear as to what medical

16

evidence supports the ALJ's determination that Plaintiff had the RFC to perform medium work with only slight limitations. Therefore, on remand, the ALJ shall support the RFC determination with medical evidence that addresses the Plaintiff's ability to function in the workplace. To the extent that the record is insufficient, the ALJ should re-contact the examining physicians or order further consultative examinations that specifically address Plaintiff's RFC.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social security benefits be **REVERSED and REMANDED** to the Commissioner for further proceedings consistent with this Memorandum and Order. An appropriate Order of Remand shall accompany this Memorandum and Order.

Dated this 5th day of January, 2016.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**